UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Natalie F., | No. 23-cv-0163 (DLM) |
| Plaintiff, | |
| v. | **ORDER** |
| Martin J. O'Malley, Commissioner of Social Security Administration, | |
| Defendant. | |

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Natalie F. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for benefits. This matter is before the Court on the parties' briefs seeking judgment on the administrative record. (Docs. 15 (Plaintiff's brief), 19 (Commissioner's brief).) For the reasons below, the Court affirms the Commissioner's decision and dismisses this matter with prejudice.

## BACKGROUND

On November 23, 2020, Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability beginning May 26, 2020. (Tr.[1] at 27, 257-70.) The Social Security Administration ("SSA") denied Plaintiff's claim initially and upon her request for reconsideration. (Tr. at 129-34 (initial denial), 147-70 (reconsideration).) Plaintiff then timely requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a telephone hearing on the matter on November 17, 2021. (Tr. at 43-67.) Plaintiff was represented by counsel, appeared at the hearing, and testified on her own behalf. (Tr. at 43-67.) A vocational expert also testified and was subject to examination by both the ALJ and Plaintiff's counsel. (Tr. at 61-66.)

On December 27, 2021, the Commissioner sent a notice of unfavorable decision to Plaintiff. (Tr. at 27-37.) In that decision, the ALJ recognized that Plaintiff suffered from the severe impairments of a spine disorder and a major joint abnormality in her right knee. (Tr. at 30.) The ALJ also acknowledged that Plaintiff suffered from a number of mental impairments which included depression, anxiety, and a history of drug addiction, but characterized them as non-severe because they "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." (Tr. at 30.)

---

[1] The Commissioner filed the consecutively paginated transcript of the administrative record on March 16, 2023. (Doc. 8.) For ease of reference, citations to the transcript will identify the page number listed on the lower right corner of the cited document.

Despite Plaintiff's impairments, the ALJ determined that she retained the residual functional capacity ("RFC") [2] to perform light work [3] with the additional physical limitations of never "climbing ladders, ropes or scaffolds; and frequently stooping, crouching, and crawling. (Tr. at 33.) As for mental limitations, the ALJ found that Plaintiff had the RFC

> to understand and carry out at least simple instructions in a low stress job (defined as one with only occasional decision making or changes in the work setting required) that does not involve piece work or fast-moving assembly line-type work, or more than occasional interaction with the public, coworkers, and supervisors (after brief training period).

(Tr. at 33.) The ALJ credited the testimony of the vocational expert that even with these limitations, there are at least 223,000 jobs in the national economy that Plaintiff can perform spread across three representative occupations listed in the Dictionary of Occupational Titles ("DOT"): mail clerk, DOT 209.687-026 (12,000 jobs nationally); housekeeper/cleaner, DOT 323.687-014 (193,000 jobs nationally); and small products assembler, DOT 706.684-022 (18,000 jobs nationally). (Tr. at 36, 64-65.) As such, the ALJ found Plaintiff "not disabled" for benefits purposes. (Tr. at 37.)

---

[2] "RFC is defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007)) (cleaned up).

[3] By regulation, light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); *see also* 20 C.F.R. § 416.967(b). Even if the weight lifted is very little, "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b); *see also* 20 C.F.R. § 416.967(b).

Although Plaintiff was represented by counsel during her proceedings before the ALJ (*see, e.g.*, Tr. at 45), her lawyer withdrew after receiving the ALJ's notice of an unfavorable decision (Tr. at 19-20). Acting pro se, Plaintiff timely requested review by the Appeals Council, which was denied. (Tr. at 1-4.) Thus, the ALJ's decision is final, subject to judicial review.

Plaintiff appears before this Court pro se too. In seeking judicial review, Plaintiff asserts the ALJ erred by not finding her disabled based on the combination of her physical and mental impairments. (Doc. 1 at 2; Doc. 15 at 1-2.) In response, the Commissioner asserts that substantial evidence supports the ALJ's decision as a whole. (Doc. 19 at 8-14.)

## ANALYSIS

This Court reviews the ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision was infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1138, 1154 (2019) (cleaned up) (further citation omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1090 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to determine whether it contains sufficient evidence to support the ALJ's conclusion. *Biestek*, 139 S. Ct. at 1154; *Grindley v. Kijakazi*, 9 4th 622, 627 (8th

4

Cir. 2021). When substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089.

Because Plaintiff is proceeding pro se, the Court broadly and liberally construes the arguments raised in her pleadings. *Accord Hazley v. Roy*, 16-cv-3935 (TNL/SRN), 2018 WL 1399309, at *4-6 (D. Minn. Mar. 20, 2018) (finding no error in magistrate judge's decision to broadly construe filings by "cobbling together" allegations from several pleadings). Even viewed through that lens, Plaintiff does not contest that the ALJ followed the five-step sequential process laid out in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4) for evaluating DIB and SSI claims, respectively.[4] Rather, there appear to be three potential arguments which Plaintiff raises: (1) that the ALJ understated the severity of her mental impairments; (2) that the ALJ's RFC determination did not accurately reflect Plaintiff's physical and mental impairments; and (3) that it was error for the ALJ to credit the

---

[4] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under Appendix 1 to Subpart P of Part 404. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and decide (at step four) whether the claimant can still do their past work given their limitations. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

vocational expert's testimony that there was a substantial number of jobs available to Plaintiff. The Court addresses each in turn.

## I. THE ALJ'S MENTAL IMPAIRMENT CONCLUSIONS ARE SUPPORTED BY SUBSTANTIAL EVIDENCE.

The Court first addresses Plaintiff's mental impairments. As the ALJ correctly noted, the SSA has identified four broad functional areas relevant to determining the severity of a person's mental impairments: (1) the person's ability to understand, remember, or apply information; (2) the person's ability to interact with others; (3) the person's ability to concentrate, persist, or maintain pace; and (4) the person's ability to adapt or manage themself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to rate the degree of a person's limitations in each of these functional areas on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4); 416.920a(c)(4). Ratings of "none" or "mild" generally mean that the person's impairment is not severe (at least absent some other evidence indicating the person is limited in doing work). 20 C.F.R. §§ 404.1520a(d)(1); 416.920a(d)(1). This Court reviews an ALJ's determinations about the severity of a person's mental impairments to determine whether they are supported by substantial evidence. *Kirby v. Astrue*, 550 F.3d 705, 707-08 (8th Cir. 2007).

Here, the ALJ determined that Plaintiff had mild limitations in each of the functional areas. (Tr. at 30-31.) These conclusions were supported by record evidence. The ALJ found Plaintiff could understand, remember, or apply information based on her meal preparation, simple maintenance, shopping, memory tests, and ability to provide health information.

(Tr. at 30.) The ALJ's conclusion that Plaintiff had a mild limitation interacting with others was supported by evidence that she did not like crowds, but could shop, spend time with family, cohabitate, and demonstrate a pleasant and cooperative demeanor. (Tr. at 30.) Plaintiff's mild limitation in the ability to concentrate, persist, or maintain pace was shown by her ability to prepare meals and manage funds. (Tr. at 30.) And the mild limitation in Plaintiff's ability to adapt or manage herself was supported by evidence that she engaged in self-care and personal hygiene activities, as well as caring for her child. (Tr. at 30-31.)

Additionally, the ALJ conducted an appropriate evaluation of the medical evidence associated with Plaintiff's mental impairments, including the observations and conclusions of both her treating medical providers and prior administrative medical findings. By regulation, an ALJ must consider several factors in evaluating the persuasiveness of medical opinions but prioritize the factors of supportability and consistency as the most important. 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2). While "supportability" and "consistency" are terms of art, the regulations indicate that, as used in this context, the words mirror their everyday meaning: supportability means that a finding will be considered more persuasive the more it is supported by objective medical evidence; consistency means that a finding will be more persuasive if it is consistent with the other medical and nonmedical sources relevant to Plaintiff's claim. 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

Plaintiff's state agency psychological consultants determined that she had mild limitations in each of her four functional areas. The ALJ found such limitations supported

by Plaintiff's self-report of improved anxiety symptoms and well-controlled depression, and consistent with her mental status findings during exams. (Tr. at 31.) These limitations were, as the ALJ noted elsewhere in the decision, also consistent with Plaintiff's daily activities. (Tr. at 30.) As the ALJ observed, during a post-partum follow up appointment one of Plaintiff's providers suggested she would benefit from extended post-delivery time off to address her anxiety. (Tr. at 35, 442.) However, this same provider indicated in an appointment a few weeks later that Plaintiff's new medications seemed to be effective for her anxiety, which Plaintiff endorsed during her hearing testimony. (Tr. at 35, 58-59, 419.)

Finally, it is true that Plaintiff testified that her anxiety was keeping her from work and that the paperwork associated with a recent convenience store job which Plaintiff held ended up being too difficult for her to complete. (Tr. at 55-56.) That testimony, in isolation, may have supported more significant ratings than mild, particularly related to understanding or applying information, concentrating or persisting, and interacting with others. But Plaintiff's testimony does not stand alone. As the ALJ noted, objective evidence, including Plaintiff's medical records and her records of daily activities, reflect that Plaintiff can perform many tasks with only mild mental limitations. On the entirety of this record, there is substantial evidence to support the ALJ's severity conclusions.

## II.  SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S RFC DETERMINATION.

The Court next addresses the ALJ's determination of Plaintiff's RFC. Again, interpreted liberally, Plaintiff asserts that her RFC did not accurately reflect the breadth and depth of her actual physical and mental impairments.

An ALJ must consider all relevant evidence in the record to fashion a plaintiff's RFC, "including medical records, observations of treating physicians and others, and [the plaintiff's] own description of [their] limitations." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995); *see also* 20 C.F.R. § 404.1545(e) (providing that the ALJ "will consider the limiting effects of all [a plaintiff's] impairment(s), even those that are not severe, in determining [their] residual functional capacity"). "[T]o find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (citing *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989)).

It is Plaintiff's burden to establish that her RFC should have included greater limitations than imposed by an ALJ. *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000) (citing 20 C.F.R. §§ 404.1520(a), (e), (f); 404.1545-46; 404.1560-61; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). The question before the Court is whether a reasonable mind could accept that no such limitations are necessary on this record, as the ALJ found. *Biestek*, 139 S. Ct. at 1154. In considering this question, the Court does not substitute its own judgment for that of the ALJ by reweighing the evidence. Instead, it must consider evidence that supports and detracts from the ALJ's decision and affirm the ALJ's decision where "it is possible to draw two inconsistent positions from the evidence and one of those positions represents

the ALJ's findings." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).

As for the Plaintiff's RFC, the Court concludes it is supported by substantial evidence. Despite only mild mental impairments, the ALJ nonetheless imposed limitations that Plaintiff be in a low stress job with simple instructions and limited personal interaction. (Tr. at 33; *see also id.* at 31 (ALJ explaining mental limitations were included in RFC "out of an abundance of caution").) As for Plaintiff's physical impairments, the ALJ determined that Plaintiff could still perform light work, as long as there were additional limitations on climbing, crawling, stooping, and the like. (Tr. at 33.) Here, the ALJ actually *discounted* the findings of state agency medical consultants, who opined that Plaintiff could perform medium work[5] and frequently climb. (Tr. at 35.) According to the ALJ, a "medium work and climbing limitation is unsupported because . . . the claimant has lumbar facet arthropathy along with receiving physical therapy treatment for her right knee pain." (Tr. at 35.) This conclusion reflects a careful and thoughtful consideration of which limitations were supported by the record as a whole.

---

[5] By regulation, "medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). The SSA has explained that "[m]ost medium jobs . . . require the worker to stand or walk most of the time" and "require gross use of the hands to grasp, hold, and turn objects rather than use of the fingers for fine movements of small objects." Social Security Ruling ("SSR") 96-8p, 1983 WL 31254, at *5 (SSA January 1, 1983) (a policy interpretation binding on the SSA that is intended to guide ALJ in deciding the appropriate RFC for "persons who have both a severe exertional impairment and a nonexertional limitation or restriction," *id.* at *1).

Plaintiff's testimony and the record evidence demonstrated that she was not so impaired that she was beyond performing light work with some accommodations. While Plaintiff may believe more limitations were appropriate, the ALJ's determination was not outside the "zone of choice" that would merit reversal. *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). Here, no error attached to the ALJ's determination of Plaintiff's RFC.

### III.   THE ALJ APPROPRIATELY RELIED ON THE TESTIMONY OF THE VOCATIONAL EXPERT.

Finally, the Court addresses the ALJ's reliance on vocational expert testimony in his decision. The vocational expert testified that based on Plaintiff's RFC, there were hundreds of thousands of matching jobs in the national economy. The vocational expert analyzed Plaintiff's recent employment history and found she could not perform her prior salesclerk job as actually performed because it required medium work. (Tr. at 63.) The expert then found Plaintiff had the physical capacity to perform a general DOT-based cashier job, as well as the jobs of housekeeper/cleaner and small products assembler. (Tr. at 64.) With the inclusion of Plaintiff's mental-impairment limitations on job structure and personal interactions, the vocational expert determined that Plaintiff could not perform the cashier job, but could be a mail clerk, as well as the housekeeper/cleaner, and small products assembler positions previously identified. (Tr. at 64-65.) All told, at least 223,000 of these jobs existed in the national economy, according to the vocational expert. (Tr. at 64-65.)

"A vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." *Hulsey v. Astrue*, 622, F.3d 917, 922 (8th Cir. 2010) (citing *Grissom v. Barnhart*, 416 F.3d 834, 837 (8th Cir. 2005)). As discussed above, that was the case here. The hypothetical posed to the vocational expert was based on an appropriately tailored RFC, and it was not error for the ALJ to rely on the expert's responsive testimony.

Having expert testimony based on a properly tailored RFC does not end the matter, however. The question is not simply whether there is a job Plaintiff could perform, but how many jobs exist. Here, the ALJ relied on the testimony of the vocational expert that there were at least 223,000 jobs in the national economy available to a person like Plaintiff. (Tr. at 36-37.) While "it would have been preferable for the ALJ to elicit testimony from the vocational expert regarding regional numbers," testimony that there are at least 223,000 jobs nationwide, across at least three representative occupations, is substantial evidence "that there are a significant number of jobs in the national economy which Plaintiff can perform." *Samantha M.A. v. O'Malley*, 22-cv-3119 (TNL), 2024 WL 841270, at *8 (D. Minn. Feb. 28, 2024) (cleaned up); *accord Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997); *Hall v. Chater*, 109 F.3d 1255, 1258-59 (8th Cir. 1997).

## ORDER

Based on the above findings, as well as the files, records, and proceedings above, **IT IS ORDERED** that:

1. Plaintiff's request for reversal (Doc. 15) is **DENIED**; and

2. The Commissioner's request for affirmance (Doc. 19) is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 28, 2024

*s/Douglas L. Micko*
DOUGLAS L. MICKO
United States Magistrate Judge